HADLEY v. PROVIDENT SAVINGS LIFE ASSUR. SOC. OF NEW YORK.

(Circuit Court, D. Massachusetts. November 30, 1898.)

No. 675.

1. LIFE INSURANCE — REPRESENTATIONS NOT MATERIAL TO RISK—INTENT TO DECEIVE.

An applicant for life insurance, in answer to a question, stated that he had never directly or indirectly been engaged in the sale of wines or liquors. He had during 10 years, ending 5 years before the application was made, been engaged in business as a druggist, in connection with which he had sold considerable quantities of liquors. In an action on the policy, it was *held* that if the statement was made willfully, with intent to deceive, was relied on, and did deceive, it would avoid the policy, though immaterial to the risk; but if it was made incidentally, without reckless intent, and without having in mind the distinction between the traffic in liquors as a traffic by itself and as one incidental to the druggist's business, where it was not material to the risk, it would not constitute a defense.

2. SAME.

Northwestern Life Ins. Co. v. Muskegon Bank, 122 U. S. 501, 7 Sup. Ct. 1221, and Insurance Co. v. Davey, 123 U. S. 739, 8 Sup. Ct. 331, applied.

On Motion for New Trial.

Alfred Hemenway and Arthur J. Selfridge, for plaintiff.
Robert M. Morse and T. H. Desmond, for defendant.

PUTNAM, Circuit Judge. This case having been tried to a jury with a verdict for the plaintiff, the defendant has moved that the verdict be set aside, and a new trial granted. The action is based on a contract of life insurance payable to the plaintiff, issued by the defendant on the application of the person whose life was insured. The court limited the defense to questions of alleged misrepresentations, excluding all defenses based on alleged warranties. Some of the alleged misrepresentations were claimed to have related to matters which might ordinarily be regarded as immaterial to the risk, and others to such as were material. The law as to each of these classes of representations was fully explained to the jury, as will appear with reference to representations which might be regarded by the jury as relating to immaterial matters, by the extracts from the charge which will be given. The instructions relating more especially to matters which might be regarded as ordinarily material to the risk, we need not give. As to the former class of representations, the only facts which need be stated are as follows:

In the application, the applicant was asked, "Are you now, or have you ever been, directly or indirectly, engaged in the sale of wines,

spirits, or malt liquors?" to which he answered, "No." The court ruled that if this answer was substantially untrue, and if the applicant, when he made the answer, knew it to be untrue, and made the answer intending to deceive the company, fearing that, if he answered truthfully, the company would not issue the policy, or would charge him a higher rate of premium, and if the company relied on the answer in connection with other matters, not on the answer alone, but on it in connection with other matters, the verdict must be for the defendant, even though the question, in the opinion of the jury, was whimsical.

The court also said:

"On this matter I make an element of the intention to deceive. I do not mean to say that you are required to find an intention to deceive as an absolute, independent fact from any special circumstances in the case." "Ordinarily, when a party puts a question which concerns his transactions with another, and the other knowingly and willfully answers it falsely, and, in consequence of that false answer, a bargain is completed, the intention to deceive is inferred by the law and the jury. When a man tells a falsehood to accomplish a certain purpose, and the purpose is accomplished, it is a rule of common sense, with which the common law does not take issue, that the intention to deceive accompanies the telling of the falsehood." "The answer may have been made carelessly. The answer may have been made, as suggested by the learned counsel for the plaintiff, not having in mind the distinction between the traffic in liquors, as a traffic by itself, and as one incidental to the druggist's business. If made incidentally, if made without reckless intent, if made through mere oversight, where it is not material to the risk, it would not suffice to establish a defense. Neither would it suffice to establish a defense unless it was relied on by the underwriters, nor unless it was one of the inducements which led the underwriters to issue the policy."

In passing on the motion for a new trial, as the defendant properly says, the instructions to the jury must be accepted as stating the law correctly. Of course, there are exceptional cases where the court is justified in granting a new trial on the ground of improper instructions; but this is not one of them. In the case at bar the ends of justice will be promoted by assuming the law to have been correctly given to the jury. It will be perceived by these instructions that, with reference to representations which might be regarded as relating to immaterial matters, the jury were expressly instructed that there must be an actual intent to deceive on the part of the person making them, and that the making of them merely incidentally, without a reckless intent or through mere oversight, would not suffice to establish a defense. The policy issued in January, 1897. At that time the applicant was about 47 years old, and he had been in active business 26 years. During 10 of those years, from 1882 to 1892, his principal business had been that of a druggist. In 1892 he entirely abandoned that business, and became very largely interested in manufactures, controlling large manufacturing corporations, and doing in that direction a very extensive business. In connection with his drug business, he had sold a very considerable amount of intoxicating liquors. There was evidence which ought to have satisfied the jury that this was not strictly limited to such liquors as were needed in the applicant's drug business, and that he carried a considerable stock, and made large sales for family uses, if not in some cases for consump-

tion on the premises. But he discontinued the whole of it when he discontinued the drug business; so that, for five years prior to his application for the policy in suit, he had been entirely disconnected from it. Strictly speaking, this representation was not in accordance with the facts; and yet it is clear, on this statement, that there was some ground on which the jury might find that he regarded this business so incidental as not to be called for by the interrogatory put to him, and better ground for its finding that it did not occur to him that the interrogatory was intended to reach a business of this character from which he had abstained for so many years.

But the matter takes on a clearer phase. It is said by the defendant that the applicant had been engaged in the sale of intoxicating liquors during 10 years, and that during that period he had sold thereof, at least, $100,000 worth. In this respect the statement of the defendant substantially agrees with what, on the whole, must be held to have been quite clearly proved in the case. But the very extent of the business defeats this position of the defendant on this motion for a new trial, because the jury may reasonably have been led to the conclusion that the applicant could not have expected to conceal from the defendant corporation transactions so extensive as these had been, and also so notorious as the evidence shows they were; so that, for this very reason, the jury might well have found that the very facts urged by the defendant defeated its proposition that this answer was given with any actual intent to deceive. Moreover, it is difficult to accept the theory which seems essential to an intent to deceive, that the applicant could have supposed that, with reference to a business of this character which had been so long discontinued, he would in any way influence the defendant corporation against the issuing of a policy to him, or affect its rates, by failing to disclose the facts as they in truth existed. There is enough to sustain the verdict of the jury on this branch of the case.

The other reason given by the defendant why the court should grant a new trial arises as follows:

The application contained the following questions and answers:

"Int. 7. Have you ever used spirits, wine, or malt liquors? Ans. Yes. Int. 8. Have you ever used them to excess? Ans. No. Int. 9. Do you now use them? Ans. Have no habit; now and then may take a cocktail or wine at meals. Int. 10. If you have ever used them to excess, give full details of how often, and how long since. Ans. No."

There was a great deal of evidence tending to show that, on several occasions, the applicant was overcome by the use of intoxicating liquors as a beverage to an extent which should properly be designated as extreme; and, indeed, the testimony of this character was so marked that, except for the rules which were laid down in Northwestern Life Ins. Co. v. Muskegon Bank, 122 U. S. 501, 7 Sup. Ct. 1221, and in Insurance Co. v. Davey, 123 U. S. 739, 8 Sup. Ct. 331, which we were compelled to give to the jury, the court would feel that the verdict ought not to stand. But, although the form of the interrogatories varied, yet, in connection with the answer which the defendant accepted,—"have no habit,"—they were in substance the same; so those rules leave so little for us in this case, and so much

for the jury, as was fully explained in our charge, that we are power-less to act.

The motion for a new trial is denied.