JOSEPH F. BASSITY, executor, *vs.* ELLEN G. WELCH.

Suffolk.   December 8, 1911. — June 19, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Will,* Undue influence.   *Undue Influence.*

Exceptions, taken at the trial of issues in the Superior Court to the refusal of the
presiding judge to rule that on all the evidence the execution of a certain will
was not procured by the fraud or undue influence of certain persons or any of
them, here were overruled on the ground that the questions presented were en-
tirely questions of fact and that the findings were warranted.

A finding that the execution of a will was procured by the undue influence of a
certain person can be found to be warranted although the will contained no
provision for the benefit of such person.

MORTON, J.   This is an appeal from the decree of the Probate
Court of the County of Suffolk allowing an instrument dated
January 8, 1907, as the last will and testament of one Catherine
Davis.  Issues for the jury were framed by a single justice and the
case was sent to the Superior Court for trial.  There were three
issues relating to the due execution of the will, the soundness
of mind of the testatrix, and the procurement of the execution
of the will by fraud and undue influence on the part of Catherine
Shields, Mary Cannon and Bridget Gaygin, or either of them.
In the Superior Court the jury answered all three issues in the
affirmative.  The verdict was set aside as to the third issue.
Another trial was had, at which the third issue was the only issue
submitted to the jury.  They answered it in the affirmative.  The
case is here on exceptions by the appellee to the refusal of the
presiding judge * to rule that on all the evidence the execution of
the will was not procured by fraud and undue influence on the
part of Catherine Shields, Mary Cannon and Bridget Gaygin
acting jointly, and was not procured by fraud and undue influence
on the part of any one of them acting separately and individually.

The questions that were thus presented were entirely questions
of fact.  No fault is found with the charge to the jury or with any
of the rulings of law that were required and were made.  The

* *Bond,* J.  · After his death the exceptions were allowed by *Pierce,* J.

evidence is all reported. We do not think it necessary to go into it here in detail. We have examined it carefully and have considered the arguments addressed to us in the briefs. The case was eminently, it seems to us, one for the jury. It was for them to say whether the money which Mrs. Welch, the contestant, received from the testatrix belonged to the testatrix or, as Mrs. Welch claimed, to her own father and mother, and it was for them to say what effect should be given to what they found to be the facts in regard to that matter. It was also for them to say what the relations between the testatrix and her children and Mrs. Welch were, and how the making of a will and the dispositions which it contained agreed with her previously expressed intentions, and to draw such inferences therefrom and from the circumstances under which the will was made as in their judgment the facts found by them warranted. They saw the witnesses, amongst whom were the parties charged with exercising undue influence, and could judge as to their credibility. The will was not made until after Mrs. Shields had moved into the house occupied by the testatrix, and both opportunity and motive could have been found to exist in her case for the exercise of undue influence. She kept secret the fact that the testatrix had given her $1,200. The gift of that sum and the devise to her of the house could have been found to be contrary to the previously expressed intentions of the testatrix, and to be more consistent than otherwise with the exercise of undue influence. There was evidence that a son of Mrs. Cannon had attempted to get the testatrix to make a will in favor of Mrs. Shields and his mother. Mrs. Cannon testified that she did not know of it, but the jury were not bound to believe her. The evidence in regard to Bridget Gaygin, who was not of kin to the testatrix and did not benefit in any way by the will, might well have been regarded by the jury as insufficient to warrant a finding of undue influence by her; but it could not be ruled as matter of law, we think, that there was no evidence warranting such a finding. There was testimony tending to show that she had lived next door to the testatrix for thirty years; that after the testatrix was taken sick she told her several times that she ought to make a will; that the testatrix said that "she was being continually bothered by everybody trying to get her to make a will," and when asked whom she meant she mentioned Mrs. Gaygin; and that on

another occasion she said, "They all seem to be leagued together to make me make a will, that is all I hear." She did not explain whom she meant by "they," but we cannot say that the jury could not have been warranted in finding that it included Mrs. Gaygin. There was also testimony tending to show that the testatrix said "she had to make a will," meaning, as it could have been found, that she was compelled to do so by persons of whom Mrs. Gaygin was one. The case, as we have said, was eminently one for the jury.

It follows that the rulings requested were rightly refused, and that the exceptions must be overruled.

*So ordered.*

*J. F. Bassity & S. E. Duffin,* for the executor.

*C. F. M. Malley, (J. Burke* with him,) for the contestant.