## FEDERAL UNDERWRITERS EXCHANGE v. CROW.

### No. 3688.

Court of Civil Appeals of Texas. El Paso.
June 30, 1938.

Rehearing Denied July 14, 1938.

Saunders & Williams, of Dallas (Touchstone, Wight, Gormley & Price, of Dallas, on the brief), for plaintiff in error.

Walden & McDonald, of Odessa, and Lindsay P. Walden, of Abilene, for defendant in error.

WALTHALL, Justice.

This is a suit arising under the Workmen's Compensation Law of Texas, Ver-

non's Ann.Civ.St. art. 8306 et seq. W. D. Crow sought to recover compensation based upon injuries to his left hand, which he claimed he sustained on or about June 1, 1936, while employed by B. H. Willis as a teamster, in which capacity he alleged that his duties required that he drive teams and attend to them and have general custody as well of the incidental things necessary for their proper keeping; to assist in building tanks and to do dirt work. He alleged that the team in his charge escaped on or about May 31, 1936, and that he hunted for said team of mules in his own automobile all that day and all that night and all of the day of June 1st; that after eating supper on the evening of June 1st, he had started out in his automobile to the headquarters of his employer at Wicket, Texas, to inform the foreman in charge there of the situation and to secure horses to go and search for the mules on a ranch. He alleged he was involved in a crash between a car and a truck with resulting injuries. Various other allegations were made, as in the ordinary compensation case, about notice of injury, claim for compensation, award of the Board, etc., and a copy of the award was attached to his petition for jurisdictional purposes. Plaintiff's original petition and the copy of the award of the Industrial Accident Board show that the Board denied the claim for compensation on the ground that Crow was not in the course of employment when he received the injuries of which he complains. The insurance carrier duly leveled a general demurrer to plaintiff's allegations, which demurrer was overruled by the court, to which ruling of the court the insurance carrier took exception. The case was tried to a jury and after the overruling of the insurance carrier's motion for an instructed verdict the court submitted the case to the jury upon five special issues, in response to which the jury found: First, that Crow sustained loss of his left hand; second, that he sustained such loss of his hand while working as an employe of B. H. Willis; third, that he sustained loss of his hand while in course of employment of B. H. Willis; fourth, that he was not in a state of intoxication when he lost his left hand; and, fifth, that his average weekly wage during the year immediately preceding the date of his injury was $22.15.

The court rendered judgment in favor of Crow against the insurance carrier for $1993.50 and costs of suit. The insurance carrier's amended motion for new trial was duly filed, presented and by the court overruled.

Plaintiff excepted and appeals by writ of error.

### Opinion.

Defendant in error has not favored us with a brief.

We will designate plaintiff in error as plaintiff and defendant in error as defendant.

Plaintiff's propositions one and two present the issue whether the injuries sustained by defendant are compensable under the facts pleaded by defendant and the evidence offered in support thereof. After stating the character of his employment as that of a teamster for his employer, defendant, in substance, alleged that about May 31, 1936, the mule team he drove and had charge of (in the course of his employment) got out of the lot and got away, and that upon discovering that the team had escaped from the lot he began to hunt for them; that he searched that day and night and all of June 1st, using his own automobile; that while hunting and inquiring of the whereabouts of the team he was informed that in the vicinity of a certain ranch there were some stray stock; that it was impossible to reach and search said ranch by automobile so he returned to his home to eat supper; that thereafter he started to go to Wicket, the base and principal station of operation of his employer, a distance of twenty-five miles, and there to inform the foreman in charge, that he might secure horses to go to and search said ranch; that in going to Wicket defendant was accompanied by Buster Putnam, John Crow and Louise Brown; that in going to Wicket he traveled the usual route; that in going to Wicket, Buster Putnam, at defendant's request, was driving the automobile as he was very tired after searching for two days and one night; that in traveling defendant was on the front seat in the center with his left arm around Putnam and his hand resting on the left door of the automobile; that while so situated they met a truck going north and in the opposite direction, and with which truck the automobile in which defendant was riding collided, the truck striking defendant's left hand, breaking and crushing the bones thereof to the extent that amputation of the left hand was necessary.

Defendant testified South Westmoreland was his immediate superior on his job; that

Westmoreland told him to go just where he could go in his car to locate and find them and that he would see witness that afternoon and for witness to report whether he had found the mules or had not, after his search, and not finding the mules witness started to Wicket to find Westmoreland and report to him, and to find out definitely what was the best to do about going ahead and trying to find the mules. On his way to Wicket the accident occurred in which defendant was injured.

■ Appellant refers to Smith v. Texas Employers' Ins. Ass'n, Tex.Com.App., 105 S.W.2d 192, as applicable to the facts here. We think the case is distinguishable in its facts from the instant case. The case is a street case. We can only refer briefly to the case. Smith received his injury while on the street while going home from his work. He was subject to call but had not been called. His risk when and where injured was one shared by all men whether in or out of employment, and a special exposure while in employment was not shown or involved. Judge German quotes with approval from annotations in 51 A.L. R. pp. 509 to 534. In the matter quoted it is said (page 194) : "But when a workman is sent into the street on his master's business, whether it be occasionally or habitually, his employment necessarily involves exposure to the risks of the streets and injury from such a cause arises out of his employment." Here, as we construe the facts pleaded and shown, Crow was in search of the mules, directly in line of his employment, and, not finding them, was told to report to his superior officer; on his way to make such report and receive further instruction he was injured. The evidence does not tend to show that Crow, at the time injured, had turned aside from doing what he was instructed to do. It was immaterial that Crow was driving his own car at the time he was injured. The evidence was sufficient to sustain the jury's finding that Crow was not intoxicated at the time he was injured.

■ One of defendant's attorneys, in his opening argument to the jury and while discussing issue No. 4, submitted on defendant's intoxication, said: "Gentlemen of the Jury: The defendant, Federal Underwriters Exchange, in this case pleaded that the plaintiff, W. D. Crow, was drunk on the occasion in question so as to escape payment of compensation to the said W. D. Crow." The argument was timely objected to on the ground that it advised the jury of the legal effect of the answer to special issue 4, and for that reason was prejudicial. Plaintiff, in addition to the objection, filed a motion to instruct the jury not to consider the argument for the reason that it tells the jury the effect of its answer to issue 4. The court overruled the motion. The court qualified the bill of exception to the extent of saying that counsel making the argument did not hear the objection, as it was whispered to the court. The court did not instruct the jury not to consider the remark of counsel. A majority of this court is of the opinion, and so holds, that the argument causes reversible error, and the assignment is sustained.

■ The trial court defined to the jury the terms "intoxication" and "under the influence of intoxicating liquors." Plaintiff submits that the terms defined are of ordinary meaning, and it was reversible error to define the terms. No objection is made to the definition given. As said in Mutual Life Ins. Co. v. Johnson, 64 Okl. 222, 166 P. 1074, it might have been preferable to have instructed the jury that the terms as used should be understood in their ordinary and popular sense, and leave it to the jury to determine from the evidence whether defendant was intoxicated, as so understood. The giving of the definition was not held to be reversible.

■ The court submitted special issue No. 5, as follows: "What do you find from a preponderance of the evidence to be the average weekly wages during the year immediately preceding June 1, 1936, of plaintiff, W. D. Crow? Answer in dollars and cents, if any. In answering the foregoing special issue No. 5, you are instructed that the Workmen's Compensation Law of Texas provides that if the injured employe shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the day when so employed, and the average weekly wage shall be 1/52nd part of the average annual wages."

The complaint made against the charge is, first, no definition is given as to the meaning of the term "substantially the

whole of the year immediately preceding the injury."

Plaintiff objected to the charge in due time, and requested the court to define the term to the jury as "being a year, about a year, so near a year as to be a year for all practical intents and purposes."

The charge is in the words of Article 8309 of the Statute in defining the meaning of "average weekly wages," in both numbers one and two. We do not think a definition of the term would be helpful, or required. Especially is that the usual rule to be observed, unless a different meaning from its usual, use is plainly required by the context. The usual meaning of the term seems to be the one to express the average weekly wage of the employe here. Plaintiff has referred us to no case, and we have found no case, holding that a definition of the term should be given. In Petroleum Casualty Co. v. Williams, 15 S.W. 2d 553, Judge Critz, for the Supreme Court, said (page 555): "Substantially a year, within the meaning of subdivisions 1 and 2, is exactly 300 days or close to, or near to 300 days. It may be slightly more than 300 days or slightly less than 300 days. That is to say *substantially a year* means a year or about a year, or so near a year as to be a year for all practical purposes. * * * Further, it would be doing violence to the express purpose of the act to give the word substantial an absolute literal meaning or definition," and states the reason.

In Howard et al. v. Texas Employers' Ins. Ass'n., 292 S.W. 529, we understand Judge Nichels, of the Commission of Appeals, as holding that the rules announced in Sections 1 and 2 of Article 8309 may so operate as to fix an average annual wage calculated upon a service of 250 days. The above references, we believe, demonstrate the impracticability of defining the term.

■ Plaintiff insists the record shows that defendant had not worked substantially the whole of the year preceding his injury within the proper meaning of the term, and the court should not have submitted the issue of wage rate. While his testimony is confusing, Crow testified that on or about June 1, 1936 he was working for B. H. Willis; that he had worked for him since July 25, 1935, driving teams; varied from that kind of work a little; built fire walls, slush pits, hauled pipe and anything in the way of oil field equipment; drove the team; South Westmoreland was

foreman; team got out about the last day of May and witness went to hunt them; Westmoreland told him to use witness's car and he did. (We omit what has been stated under other issues.) Willis paid him forty-eight cents an hour, or $3.84 for an eight hour day; worked eight hours or more; worked for B. H. Willis "since around the first day of January, 1936"; before that worked for J. J. Willis "since July 25, 1935"; same wages; the months witness worked there, "it lacked a month and twenty-five days being a year in the course of employment." Question: "Did you work in that employment for as long as 300 days?" Answer: "I believe I did." (The Court: "Let him state the facts and not what he believes") Answer: "Yes." From the record we have concluded that the court was not in error in submitting to the jury whether defendant had worked substantially the whole of the year preceding his injury.

■■ In his petition defendant alleged that at the time of his injury he was an employe of B. H. Willis; that prior to the first day of June, 1936, plaintiff had issued to his employer a policy of workmen's compensation insurance, which policy covered the work being done by this employer, and was in effect at the time mentioned.

Plaintiff submits that the testimony raises the issue as to whether or not at the time of his injury defendant was working for B. H. and J. J. Willis, a partnership, instead of B. H. Willis, an individual, and that it was error to refuse to submit such issue upon plaintiff's request.

Plaintiff answered by general denial, and requested the submission of such issue, which is not found in the record.

The basis of liability of an insurance carrier for payment to an employe for compensation for injuries received, resulting from accidents occurring in the course of their employment by a particular employer, is contractual and evidenced by a compensation policy issued by the carrier to such employer. As stated above, defendant alleged that the policy of compensation insurance was issued to B. H. Willis, his employer.

The evidence raised the issue contended for by plaintiff, and the issue not having been submitted on timely request, the case must be reversed and remanded, and it is so ordered.